IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOSE MANUEL NUÑEZ-NARANJO,

              Defendant.

No. 3:15-cr-00019-HZ

OPINION & ORDER

Gregory R. Nyhus
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

    Attorney for Plaintiff

Stephen R. Sady
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

    Attorney for Defendant

1- OPINION & ORDER

HERNÁNDEZ, District Judge:

Defendant Jose Manuel Nuñez-Naranjo brings this Motion to Dismiss for Violation of the Speedy Trial Act. Defendant contends that the federal indictment charging him with being an alien in possession of a firearm, in violation of 18 U.S.C. § 922(g), was not filed within 30 days of his arrest as required under the Speedy Trial Act, 18 U.S.C. § 3161(b). The Court heard oral argument on April 2, 2015 and April 13, 2015. For the reasons that follow, Defendant's motion is denied.

## BACKGROUND

On July 30, 2014, Defendant was arrested by Clackamas County deputies following a traffic stop in which they discovered a firearm. Defendant was taken into custody and charged with "Unlawful Possession of a Weapon" and "Failure to Carry and Present a License." On the same day, an immigration detainer was filed. Def.'s Ex. 101.

On July 31, 2014, Defendant was given a plea offer from the Clackamas County District Attorney and was released from state custody. Def.'s Mot. Ex. C. Defendant was ordered to appear on September 4, 2014; he failed to do so but he did appear in Multnomah County on October 8, 2014 on an unrelated charge of possession of methamphetamine. Def.'s Mot. Ex. A, D. Defendant pleaded guilty to "Possession of Controlled Substances—Methamphetamine" and received a sentence of 20 days incarceration. Def.'s Mot. Ex. E. Because of the existing Clackamas County warrant, on November 3, 2014, Defendant was transported to Clackamas County. Def. Mot. Ex. F.

At oral argument, Immigration Enforcement Agent Prince Planthara, the primary agent working on Defendant's case, testified that on November 18, 2014, he was part of an email

conversation with Clackamas County Deputy District Attorney (DDA) Michael Salvas and jail staff. Mr. Planthara testified that he had communicated to DDA Salvas that there was federal interest in prosecuting Defendant for the federal charge of alien in possession of a firearm.

On November 19, 2014, DDA Salvas filed a motion to dismiss the state charges, "on the grounds and for the reason that the U.S. Attorney's office will be seeking to prosecute defendant on these charges." Def.'s Mot. Ex. G. The order was signed the same day. Id.

Also on the same day, November 19, Defendant was arrested by Mr. Planthara on behalf of Immigration and Customs Enforcement (ICE). Mr. Planthara testified that his sole purpose in making the arrest was to effect an administrative detention for violation of immigration laws. According to Mr. Planthara, because Defendant had a prior conviction for possession of methamphetamine, he was deemed a mandatory arrest according to ICE priorities.

The Department of Homeland Security (DHS) Form I-213, filled in by Mr. Planthara on November 19, 2014, states the current administrative charges against Defendant as "Alien Present Without Admission or Parole" and "Controlled Substance Conviction." Def.'s Ex. 119 at 2. The DHS Form I-265, also dated November 19, 2014, includes the handwritten notation: "Subject has a PCS conviction, and has been accepted for federal prosecution 922(g)." Def.'s Ex. 123 at 1.

Defendant's "A-file"[1] documents demonstrate that once Defendant was taken into ICE custody, he requested that an immigration judge review his custody determination. Def.'s Ex.

---

[1] The A–file documents the history of immigrants' and others' interactions with components of the Department of Homeland Security and predecessor agencies. Dent v. Holder, 627 F.3d 365, 372 (9th Cir. 2010). The United States Customs and Immigration Service (USCIS) uses the information in an A–File to enforce U.S. immigration laws. See 72 Fed. Reg. 9017–01, 2007 WL 594827 (2007); see also 72 Fed. Reg. 1755–02, 2007 WL 86868 (2007) ("The A–File is the record that contains copies of information regarding all transactions involving an individual as he/she passes through the U.S. immigration and inspection process. Previously, legacy Immigration and Naturalization Services (INS) handled all of these transactions. Since the formation of DHS, however, these responsibilities have been divided among

3- OPINION & ORDER

121. In addition, Defendant waived his right to a 10-day period prior to appearing before an immigration judge, asking instead for an expedited hearing on a Form 1-862, titled "Notice to Appear." Def.'s Ex. 122 at 2. At oral argument, Mr. Planthara testified that the Notice to Appear is the charging document for immigration proceedings in immigration court and that an immigration case begins with the filing of such document. However, Mr. Planthara testified that in this case, neither he nor any other immigration enforcement agent filed the Notice to Appear with the immigration court. As a consequence, the immigration court has no open case for Defendant, Defendant's A-file reflects no activity in the immigration case since November 19, 2014, no asylum officer has conducted a credible fear review, and Defendant has yet to appear before an immigration judge. Mr. Planthara conceded that the failure to file the Notice to Appear was contrary to normal protocol.

On January 14, 2015, Defendant was indicted by a federal grand jury and an arrest warrant was issued. On January 28, 2015, Defendant first appeared in federal court and was arraigned on a single-count indictment alleging "Alien in Possession of a Firearm," in violation of 18 U.S.C. § 922(g)(5).

## STANDARDS

Under the Speedy Trial Act, an "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If a violation occurs, the Act mandates dismissal:

---

USCIS, ICE, and CBP. While USCIS is the custodian of the A–File, all three components create and use A–Files."). The A-file "contains all the individual's official record material such as naturalization certificates; various forms (and attachments, e.g., photographs), applications and petitions for benefits under the immigration and nationality laws, reports of investigations; statements; reports; correspondence; and memoranda on each individual for whom INS has created a record under the Immigration and Nationality Act." 66 Fed. Reg. 46812–02, 2001 WL 1016875 (2001).

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1).

## DISCUSSION

Defendant argues that the civil immigration arrest on November 19, 2014, marks the beginning of federal speedy trial analysis because the arrest was "in connection with" the subsequent federal criminal prosecution. According to Defendant, there were 57 days between his arrest and indictment. Defendant argues that the case should be dismissed with prejudice. Defendant's argument fails.

Under the Speedy Trial Act, the 30-day requirement applies to an indictment issued <u>in connection with</u> the offense for which the defendant was arrested. 18 U.S.C. § 3161(b) (emphasis added). "Offense" is further defined as "any Federal criminal offense." 18 U.S.C. § 3172(2); <u>United States v. Cepeda–Luna</u>, 989 F.2d 353, 356 (9th Cir. 1993); <u>see also</u> <u>United States v. Benitez</u>, 34 F.3d 1489, 1493 (9th Cir. 1994) (holding that only a federal arrest on federal charges triggers the running of the 30–day Speedy Trial Act clock).

Generally, the Speedy Trial Act does not apply to civil detentions, including administrative detention by ICE. <u>Cepeda-Luna</u>, 989 F.2d at 355. However, the Ninth Circuit has adopted the "ruse exception" to this general rule. <u>Id.</u> at 357. Under this exception, "the Speedy Trial Act can be applied to civil detentions which are mere ruses to detain a defendant for later criminal prosecution." <u>Id.</u> Defendant urges the Court to apply the exception to this case.

However, the question of whether the "ruse exception" applies only arises if the civil detention was "in connection with" the charges contained in the later indictment. 18 U.S.C. 3161(b); <u>see also</u> <u>Cepeda-Luna</u>, 989 F. 2d at 357 ("We have stated that section 3162(a)(1) must

5- OPINION & ORDER

be read in connection with section 3162(b) to mean that a 30 day period commences to run as to <u>any charge on which that arrest was based.</u>") (emphasis in original, citation omitted). "The time limit for indicting an accused does not begin to run if the accused is arrested for an unrelated offense." <u>Cepeda-Luna</u>, 989 F. 2d at 357 (quoting <u>United States v. Reme</u>, 738 F.2d 1156, 1162 (11th Cir. 1984)).

Here, the charges in Defendant's civil arrest were "Alien Present Without Admission or Parole" and "Controlled Substance Conviction;" the later criminal charge of "Alien in Possession of a Firearm" was brought in the indictment. Nevertheless, Defendant argues that ICE's failure to file the Notice to Appear in immigration court and the lack of activity in Defendant's immigration proceedings are evidence of the fact that the true purpose of the civil arrest was to hold Defendant until the federal grand jury was convened and the U.S. Attorney's Office could bring federal criminal charges. Defendant argues that the extensive communication between ICE agents and the federal prosecutor serves as further evidence that Defendant's civil arrest was "in connection with" the later criminal indictment.

Defendant's argument is not supported by the law. Where a defendant's civil detention is pursuant to a charge independent from a defendant's criminal charges, the Speedy Trial Act is not implicated. <u>United States v. Ortiz-Lopez</u>, 24 F.3d 53, 55 (9th Cir. 1994). Here, the civil charges and the criminal charge are clearly independent charges. While the failure to follow protocol in Defendant immigration case and the extensive communications between ICE agents and the federal prosecutor could be presented in support of a "ruse exception" argument, this Court does not reach that issue because Defendant's civil arrest was not "in connection with" the federal criminal charge.

6- OPINION & ORDER

The cases cited by Defendant support this conclusion. In Cepeda-Luna, the Ninth Circuit declined to apply the Speedy Trial Act because defendant's civil detention pursuant to 8 U.S.C. § 1251, which mandates deportation of aliens convicted of aggravated felonies and drug offenses, was independent of defendant's criminal indictment for illegal reentry. Cepeda-Luna, 989 F. 2d at 357. The Ninth Circuit "has repeatedly declined to apply the Speedy Trial Act in situations where the defendant's detention is not pursuant to federal criminal charges, even though federal criminal authorities may be aware of and even involved with that detention." Cepeda-Luna, 989 F. 2d at 356; see also United States v. Orbino, 981 F.2d 1035, 1036-37 (9th Cir. 1992) (fact that federal prosecutors "kept a sharp eye" on civil immigration proceedings does not trigger Speedy Trial clock); United States v. Redmond, 803 F.2d 438, 440 (9th Cir. 1986) (Speedy Trial Act not implicated when defendant transported from state to federal custody in anticipation of federal charges but returned to state custody the same day); United States v. Manuel, 706 F.2d 908, 914-915 (9th Cir. 1983) (four month delay between tribal arrest and federal indictment did not violate Speedy Trial Act); United States v. Johnson, 953 F.2d 1167, 1172 (9th Cir.) (although F.B.I. actively participated in criminal investigation, Speedy Trial Act commenced only upon federal indictment and not defendant's arrest and incarceration by state authorities).

In contrast, the cases Defendant points to where courts found Speedy Trial Act violations all involve administrative and criminal charges stemming from the same underlying conduct. For example, in United States v. Okuda, 675 F. Supp. 1552 (D. Haw. 1987), the defendant was arrested in connection with both criminal and immigration investigations regarding a false visa. The court noted that the charges were not inherently different just because one process was administrative and the other was judicial. Id. at 1555. The necessary elements and evidence for both charges were the same and the government did not need more time to discover new facts.

7- OPINION & ORDER

Id. Therefore, the court held that, because the administrative and criminal charges were sufficiently related, the Speedy Trial Act was triggered. Id. The Okuda court distinguished the case from United States v. Reme, 738 F.2d 1156 (11th Cir. 1984), where the court found an immigration arrest for illegal entry was independent of a later criminal arrest for importing illegal aliens.

Similarly, in United States v. Vasquez-Escobar, 30 F. Supp. 2d 1364, 1367-69 (M.D. Fla 1998), where the defendant was civilly detained for illegal reentry and then indicted by the U.S. Attorney's Office for illegal entry, the charges were sufficiently related to trigger the Speedy Trial Act. In United States v. Peña, 73 F. Supp. 2d 56, 57 (D. Mass. 1999), the Speedy Trial Act was triggered when immigration officials who found that the defendant was subject to being deported based on a prior deportation order held the defendant "solely to facilitate the preparation of the criminal case" on the charge of illegal reentry.

In United States v. Restrepo, the court explained that "while a civil detention by the INS alone does not necessarily trigger the Speedy Trial Act, where that period of detention is used primarily or exclusively to develop criminal charges involving the conduct on which the civil arrest was based, the time limit established by the Speedy Trial Act begins running on the date of the civil arrest." 59 F. Supp. 2d 133, 136-139 (D. Mass. 1999) (emphasis added). The Restrepo court expressly found that case to be analogous to Okuda and Vasquez–Escobar, and unlike Cepeda–Luna, "because the administrative and criminal charges against Restrepo are identical." Id. at 138.

Finally, in United States v. Quinones, the Speedy Trial Act was triggered because the defendant was in administrative detention for fraudulent misuse of a visa and illegal reentry and was subsequently criminally prosecuted for the same charges. No. 4:13-CR-391, 2013 WL

8- OPINION & ORDER

4482909 (S.D. Tex. Aug. 19, 2013). In sum, Defendant fails to present any cases where the Speedy Trial Act was triggered when the civil proceedings were independent of the federal criminal prosecution.[2] All of the cases Defendant presents in support of his arguments are distinguishable.

Ninth Circuit precedent dictates a clear outcome in this case. As in Cepeda-Luna, "[t]his court is not unsympathetic to the plight of individuals who are unnecessarily detained for extended periods because of federal incompetence or oversight" and this Court's refusal to apply the Speedy Trial Act "does not mean that immigration officials possess unfettered discretion to incarcerate deportable aliens." See Cepeda-Luna, 989 F. 2d at 358. However, because Defendant's civil detention was independent of his subsequent criminal prosecution, the Speedy Trial Act is not triggered in this case. Therefore, there is no need to decide whether the "ruse exception" would have applied.

## CONCLUSION

Defendant's motion to dismiss [10] is DENIED.

IT IS SO ORDERED.

Dated this ____15____ day of ____Apr.____, 201__5__.

_Marco Hernández_
MARCO A. HERNÁNDEZ
United States District Judge

---

[2] In addition to all of the cases discussed above, Defendant cites United States v. Osunde, 638 F. Supp. 171 (N.D. Cal. 1986). However, the Osunde court specifically declined to consider whether or not the defendant's civil arrest was in connection with the subsequent criminal charges he faced. Osunde, 638 F. Supp. at 174 n. 2.

9- OPINION & ORDER